IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DEANO MCCORT,

      **Plaintiff,**

  v.                                         Civil Action 2:17-cv-620
                                               Judge George C. Smith
                                               Magistrate Judge Jolson

MUSKINGUM COUNTY, et al.,

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Strike his Deposition (Doc. 38) and Motion for Extension of Time. (Doc. 39). For the reasons set forth below, Plaintiff's Motion to Strike his Deposition is **DENIED** (Doc. 38), and his Motion for Extension of Time is **GRANTED** (Doc. 39). Plaintiff shall file his opposition to the pending Motion for Summary Judgment (Doc. 34) no later than twenty-one days after the issuance of this Opinion and Order.

**I.    BACKGROUND**

Plaintiff Deano McCort, proceeding *pro se*, filed the instant case pursuant to 42 U.S.C. § 1983 against Muskingum County, the Muskingum County Sheriff's Department, and the Muskingum County Jail. (*See* Doc. 1). Plaintiff also sued Matt Lutz (Sherriff at the Muskingum County Jail), David Soschi [sic] (Captain at the Muskingum County Jail), Shane Love (a medical provider at the Muskingum County Jail), and Travis Nicholas (Deputy Sherriff at the Muskingum County Jail) in their individual and official capacities. (*See id.*). Defendant Love has been terminated as a party to this action. (*See* Doc. 35 (adopting recommendation that Defendant

Love's Motion for Judgment on the Pleadings be granted)).

Defendants Muskingum County, the Muskingum County Sheriff's Department, the Muskingum County Jail, Matt Lutz, David Suciu, and Travis Nicholas (collectively "Defendants") filed a Motion for Summary Judgment on April 11, 2018. (Doc. 34). In that Motion, Defendants rely on testimony from Plaintiff's deposition in this case, which occurred on February 12, 2018. (*See id*.). Defendants filed Plaintiff's deposition with the Court on April 4, 2018. (Doc. 31).

As both sides explain, Plaintiff's deposition was controversial from the start. To demonstrate, the Court follows the parties' lead in looking to the relevant portions, but not the substance, of the deposition transcript. Upon arrival, Plaintiff refused to proceed without counsel. (*Id*. at 6–7). He explained:

> I just don't want my rights being violated. Do you guys see where I'm coming from, though? If you ain't smart with the law, you guys will be asking all the questions, you know. I don't understand – I mean, I don't understand a whole lot. I never made it through 7th, 8th grade. See what I'm saying? I don't want to be— jeopardize any more of what they've done to me. You know what I'm saying? They've done locked me up, threw away the key for something I didn't even do. I know it ain't this case, I understand that, but you got to see where I'm coming from. I'm doing four and a half years for something I didn't do.

(*Id*. at 7). Defense counsel explained to Plaintiff that the deposition was in his civil case, not his criminal case, and that Defendants were entitled to discover the facts concerning the claims brought against them. (*Id*.). Ultimately, Plaintiff agreed to proceed with the deposition after both sides signed a document reflecting that he was not waiving any of his constitutional rights. (*Id*. at 7–9).

The relevant exchange is as follows:

> MS. BOCKELMAN: Mr. McCort, this is—you filed a civil lawsuit against the individuals that we represent. In a civil proceeding those individuals, through counsel, are entitled to find out the facts that form the basis of your complaints

against them. This does not involve your criminal action. I'm not here really to delve into much more than why you are in prison. Other than that, we're here today to find out what you remember and what you know about the incident and a little bit of background information about you. That's the extent of today's deposition.

THE WITNESS: That's it? Then I'll answer it as long as you guys read that out loud and sign it, I'll answer your questions. For the record. If you want to read it. Read it out loud, I'll go forward with it. It shouldn't take very long for what I remember.

MR. PERRYMAN: Well, being that this is a statement that you will be making, if you want to read it out loud.

THE WITNESS: I can't read that well. I had it typed up. So, I mean, is one you of willing to read it? I can't read that well.

MR. PERRYMAN: Okay. The typed statement as Mr. McCort has given us here states that, "It is my intention to answer questions only under the condition that I am not waiving any of my rights and that my rights under the Ohio State and Federal Constitution are granted." I'm sorry, that's guaranteed, not granted. "And that this guarantee is made by and through the parties involved in this disposition," I believe he means deposition there, "through their signatures on this statement." So, essentially, Mr. McCort, has provided a written statement that he wants to be ensured that he is not waiving any of his rights under the Ohio State or Federal Constitution. That is Mr. McCort's prerogative not to waive any of those rights. Again, we are only here to ask questions concerning the lawsuit that he's filed in the Southern District of Ohio against the Defendants, Muskingum County Sheriff's Office, representatives of that office and Nurse Shane Love.

THE WITNESS: That's fine. Do you guys want to sign it, date it?

MR. PERRYMAN: That would be fine.

(*Id*. at 7–9). With Plaintiff under oath, the deposition ensued. (*Id*. at 10).

Plaintiff answered questions for a period of time before the deposition went awry. Controversy arose when defense counsel questioned Plaintiff about the allegations in the Complaint in this case, which was marked as deposition Exhibit D. (*Id*. at 55–56) The following exchange is demonstrative:

3

> Q. I'm just trying to get an understanding of what was—you know, what you put in your complaint.
>
> A. Yeah.
>
> Q. So, you stated in Paragraph 19—
>
> A. That's why I'd rather have a lawyer present with me, so I know I'm not saying anything wrong. You know what I mean? I don't understand what you're trying to say to me. I'd rather just have a lawyer present. I'm done with today. You hear me?

(*Id*. at 60). Based on his desire to have counsel present, Plaintiff terminated the deposition:

> Q. So, to be clear, you don't want to—
>
> A. I'd rather wait until I get out or it don't matter. I'm trying to get an attorney on the case right now, anyways. You know what I'm saying? But it's kind of hard when you're in prison. You don't have access to, you know, outside communications. They don't let you get on the internet or nothing like that or find you an attorney. They don't let you do nothing of the sort.
>
> Q. Okay.
>
> A. So, I'd rather just stop because I don't want to, you know...

(*Id*. at 60–61). Although defense counsel attempted to salvage the deposition, Plaintiff terminated it based on his desire to have counsel present:

> Q. So, how about this: How about I'll table any questions about the content of your complaint for the time being?
>
> A. Do what?
>
> Q. As far as the allegations that you have in your complaint, we'll move on to something else for the time being.
>
> A. I'm done period.
>
> Q. You're done period?
>
> A. I'd rather have an attorney with me while you guys are questioning me. I just don't feel right. I mean, I do, but I don't understand what you—all the stuff you're

4

trying to say to me. I don't understand it. I only got a 7th and 8th grade education. You see what I'm saying?

Q. I understand.

A. So, I don't understand, like, some of the stuff you're asking me. Like, I don't really understand it.

Q. No, I understand.

A. I'd rather have someone to be here to represent me for what's right.

Q. And to be clear, that's your right to have that happen, but that person has to be an attorney.

A. Okay. That's fine.

Q. They can't just be Mr. Willard that works in the law library.

A. I understand that, too. I understand that. I've been working on getting a lawyer.

Q. Okay. So, is there—would you be willing to answer any questions for Ms. Bockleman for the time being?

A. No. We'll just wait until I get an attorney or I'll see you on the outside.

Q. Okay.

A. Sorry. But I just feel more comfortable with an attorney that I know—you know what I mean, that knows. Like you're sitting here asking me all these questions when I got a lot of questions I want to ask you, but I'm not allowed to ask you. You see what I'm saying?

Q. I understand. But understand I'm just a legal representative. I'm not a party of interest. I don't have any—

A. I would like to have one here, too. I feel you. Well, we're done for today.

(*Id*. at 61–63).

Rather than filing an opposition to Defendants' Motion for Summary Judgment, Plaintiff filed a Motion to Strike his Deposition from the record. (Doc. 38). At bottom, Plaintiff contends

that the deposition should not be used because he "abruptly ended [it] because of the overwhelming indicators that defense counsel was attempting to confound and muddle [his] account of the incident that occurred." (*Id*. at 2). Plaintiff also filed a Motion for an Extension of Time, requesting a stay of his deadline for filing an opposition to Defendants' Motion for Summary Judgment until the Court rules on his Motion to Strike. (Doc. 39).

The Court issued an Order expediting Defendants' response to Plaintiff's Motions and disallowed any reply brief. (Doc. 40). Defendants filed their response on May 21, 2018. (Doc. 41). Thus, Plaintiff's Motions are ripe for review.

## II. DISCUSSION

Plaintiff first contends that his deposition should be stricken because Defendants conducted it without the required leave of Court. (Doc. 38 at 6). Rule 30(a)(2) of the Federal Rules of Civil Procedure requires that leave of Court be obtained "if the deponent is confined in prison." Fed. R. Civ. P. 30(a)(2). Here, however, the Court granted leave in its scheduling order, which provided that "[d]epositions of any persons who are incarcerated may proceed on such terms and conditions as the institution shall impose." (Doc. 14 at 1). Exhibit A to Defendants' Opposition demonstrates that Plaintiff's deposition proceeded on the terms and conditions imposed by Belmont Correctional Institution, through its Unit Manager Charles Haggerty. (Doc. 14, Ex. A). Thus, Plaintiff's first argument in support of his Motion to Strike the Deposition is without merit. *See Kendrick v. Schnorbus*, 655 F.2d 727, 729 (6th Cir. 1981) (finding that defendants have a right to depose a prisoner plaintiff, who "is the very party who initiates the action of his own choice").

Plaintiff next argues that his conduct may "easily be characterized as a motion to

6

terminate" the deposition under Rule 30(d)(3)(A) on the ground that it was being conducted in bad faith or in a manner that unreasonably annoyed, embarrassed, or oppressed him. (Doc. 38 at 5–6). Accordingly, Plaintiff asserts that "[t]he proceedings should have been suspended until such time as the Court issued an order" on his motion to terminate. (*Id*. at 6). Rule 30(d)(3)(A) provides:

> At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.

*Id*. However, no motion to terminate was before the Court for consideration. But even if it were, Plaintiff fails to demonstrate that counsel conducted the deposition in such a manner as to annoy, embarrass, or oppress him. (*See generally* Doc. 31). Thus, Plaintiff's second argument in support of his Motion to Strike his Deposition also fails. *See, e.g.*, *Smith v. Stephens*, No. 2:10-cv-13763, 2012 WL 899347, at *5–6 (E.D. Mich. Mar 16, 2012) (denying plaintiff's motion to suppress his deposition pursuant to Fed. R. Civ. P. 30(d)(3)(A)).

The thrust of Plaintiff's Motion is based on his third argument, which is that his deposition should not have proceeded without "legal representation," which he regards as a "fundamental right." (Doc. 38 at 6). Despite Plaintiff's arguments to the contrary, the law on this issue is clear: there is no right to counsel in prisoner civil rights cases. *Bennett v. Smith,* 110 F. App'x 633, 635 (6th Cir. 2004). For all of these reasons, Plaintiff's Motion to Strike is **DENIED**. (Doc. 38).

Having resolved this issue, the Court now examines Plaintiff's Motion for Extension of Time. (Doc. 39). For good cause shown, the Motion is **GRANTED**. (*Id*.). Consequently,

Plaintiff shall file his opposition to the pending Motion for Summary Judgment (Doc. 34) no later than twenty-one days after the issuance of this Opinion and Order. The Court anticipates no further extensions of this deadline.

### III. CONCLUSION

Based upon the foregoing, Plaintiff's Motion to Strike is **DENIED** (Doc. 38), and his Motion for Extension of Time is **GRANTED** (Doc. 39). Plaintiff shall file his opposition to the pending Motion for Summary Judgment (Doc. 34) no later than twenty-one days after the issuance of this Opinion and Order.

### **Procedure on Objections**

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Eastern Division Order No. 14-01, pt. IV(C)(3)(a). The motion must specifically designate the Order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days after. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This Order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge. S.D. Ohio Civ. R. 72.3.

IT IS SO ORDERED.

Date: May 29, 2018 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE