# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**DEANO MCCORT,**

    **Plaintiff,**

v.                                        Civil Action 2:17-cv-620
                                           Judge George C. Smith
                                           Magistrate Judge Jolson

**MUSKINGUM COUNTY, et al.,**

    **Defendants.**

## REPORT AND RECOMMENDATION

This case was brought pursuant to 42 U.S.C. § 1983 by Deano McCort, proceeding *pro se*, against Muskingum County, the Muskingum County Sheriff's Department, and the Muskingum County Jail. Plaintiff also sued Matt Lutz (Sherriff at the Muskingum County Jail), David Soschi [sic] (Captain at the Muskingum County Jail), Shane Love (a medical provider at the Muskingum County Jail), and Travis Nicholas (Deputy Sherriff at the Muskingum County Jail) in their individual and official capacities. Defendant Love has been terminated as a party to this action. (*See* Doc. 35 (adopting recommendation that Defendant Love's Motion for Judgment on the Pleadings be granted)).

Defendants Muskingum County, the Muskingum County Sheriff's Department, the Muskingum County Jail, Matt Lutz, David Suciu, and Travis Nicholas filed a Motion for Summary Judgment on April 11, 2018. (Doc. 34). That Motion is now ripe for review. (*See* Doc. (Opposition), Doc. (Reply)). For the reasons set forth below, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 34) be **GRANTED in part** and **DENIED in part.**

I. **BACKGROUND**

Plaintiff's Complaint arises from two, seemingly separate incidents, both arising from when he was held in the Muskingum County Jail ("the jail") from November 26, 2015 through April 8, 2016. (Doc. 1 at ¶ 8).

**A. Hand Injury**

The first incident occurred at approximately 12:30 p.m. on February 11, 2016, when Officer Defendant Nicholas allegedly slammed and kicked a metal door shut, crushing Plaintiff's hand in the process. (*Id*. at ¶ 10). Plaintiff was treated for this injury by Genesis Hospital in the jail, where he was examined and received x-rays. (*Id*. ¶ 12). Plaintiff was ultimately released "in stable condition" and returned to solitary confinement, where he was being held prior to the injury. (*Id*.). Plaintiff contends that he suffers from nerve damage and pain resulting from this injury. (*Id*. at ¶ 13). He also generally alleges that his medical needs were neglected, and that the situation should not have been characterized as falling within the jail's "use of force" policy. (*Id*. at ¶¶ 13–14).

Plaintiff was deposed concerning this incident on February 12, 2018. (Doc. 31). He testified that, just prior to the incident, Defendant Nicholas had been arguing with inmate Joey Dillon about whether Dillon was permitted to have a Scrabble game. (*Id*. at 27). Plaintiff explained:

> Well, [Defendant Nicholas] was sitting there arguing with what's his name. Well, in the meantime, my hand was like this in the crease of the door (indicating). I went to push it open with my hand shut…. When I reached outside the bar, I went like, "Hey can we get some mother f*cking rec?" That's exactly what I said.
>
> And he said, "Shut the f*ck up, and kicked the door shut.

(*Id*. at 28). In response to further questioning, Plaintiff reiterated that the relevant events were as

2

follows:

> Okay, it's like this: Joey was knelt down talking and arguing with [Defendant Nicholas] about a scrabble game. I said, "Hey F*cker, can we at least have rec sometime this year?"
>
> And pushed open the door and that's when the door come back, slammed my hand. He kicked the door shut….
>
> Q. My question to you was could you see him?
>
> A. Yeah.
>
> Q. You could see —
>
> A. Through the window.
>
> Q. You could see Officer Nicholas?
>
> A. He was the only one there, yeah. Whenever I passed Joey, he was sitting there arguing with Travis. Travis was right — you could see in the window and then when I pushed the door open, that's when the door come back, smashed my hand. Yes, I could see him.
>
> Q. Okay. Could he see you?
>
> A. Could he see me?
>
> Q. Yeah.
>
> A. Well, probably not.
>
> Q. Okay.
>
> A. Well, he knew I was there yelling. I mean, he knows who I am. He knows my voice. You know what I'm saying?
>
> Q. Well I understand that. But could he see you? Like visibly see you at the time.
>
> A. Probably not, since it was just a little window right there.

(*Id*. at 38–39).

### B. Unauthorized Photo

According to Plaintiff, the second incident occurred on an unspecified date when an individual visiting another inmate at the jail took his picture and posted it to social media. (Doc 1. at ¶ 33). Plaintiff claims that the individual took his picture without permission and faults Defendant Sociu for "allow[ing] the visitor to enter the jail visitor's room with the device that took Plaintiff's picture." (*Id*.). Plaintiff asserts that he remained unaware that the individual had taken his picture until "a third party" informed him "after seeing the photographs online and had copies sent to [the jail]…." (*Id*. at ¶ 34). Plaintiff further alleges that Defendant Sociu "attempted to cover-up the fact that he allowed this unknown visitor into the jail with a recording and photography device by not allowing the photographs to be delivered to Plaintiff" and keeping them "as contraband." (*Id*. at ¶¶ 34, 36).

### C. Complaint

The Complaint contains four counts, which collectively allege excessive use of force, failure to supervise and train, and negligence. (*Id*. ¶¶ 18–36). Plaintiff seeks $3,500,000.00 in compensatory damages, as well as punitive damages and attorneys' fees. (*Id*. at 11).

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The

evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (defining "genuine" as more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III. DISCUSSION

### A. Excessive Force

To establish a prima facie claim under § 1983, a plaintiff must satisfy two elements: (1) that defendants acted under color of state law, and (2) that defendants deprived plaintiff of a federal statutory or constitutional right. *See, e.g.*, *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992) (*per curiam*). Here, Plaintiff alleges that his constitutional rights were violated when Defendant Nicholas used excessive force against him while at the Muskingum County Jail.

Because Plaintiff was a pretrial detainee at the time of his detention, he brings his excessive force claim under the Fourteenth Amendment. To succeed on such claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). This standard should not be applied "mechanically." *Id.* (citation omitted). "Rather, objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490

U.S. 386, 396 (1989)). Courts may consider a number of factors when determining the reasonableness of force used, including, but not limited to:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 125 S. Ct. at 2473.

When analyzing an officer's use of force, a court must do so "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 125 S. Ct. at 2473 (citing *Graham*, 490 U.S. at 396). "A court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Kingsley*, 125 S. Ct. at 2473 (citation, alterations, and internal quotation marks omitted).

In this case, Defendants argue that they are entitled to summary judgment on the excessive force claim against Defendant Nicholas because there is no evidence that Defendant Nicholas "acted in deliberate indifference to Plaintiff's rights." (Doc. 34 at 4). Defendants' argument fails for two reasons. First, it misstates the relevant standard for evaluating a pre-trial detainee's excessive force claim. Second, Defendants' factual assertions mischaracterize the record.

Pre-*Kingsley*, the Sixth Circuit found that, in bringing a pre-trial detainee excessive force claim, a plaintiff was required to prove a defendant acted with a certain subjective intent:

> [I]n situations where the implicated government actors are afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action ..., their actions will be deemed conscience-shocking if they were taken with deliberate

> indifference towards the plaintiff's federally protected rights. In contradistinction, in a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation ..., public servants' reflexive actions shock the conscience only if they involved force employed maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline.

*Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 134 (6th Cir. 2014) (quoting *Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001)). But the Supreme Court in *Kingsley* explicitly rejected this position. *See Kingsley*, 135 S. Ct. at 2472 ("We conclude with respect to that question that the relevant standard is objective not subjective. Thus, the defendant's state of mind is not a matter that a plaintiff is required to prove."). Now, a plaintiff "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 2473.

The evidentiary record as it stands creates a genuine issue of material fact with regard to Plaintiff's excessive force claim. On February 11, 2016, Defendant Nicholas was returning a number of inmates to their cells following recreation. (Doc. 60 at 14). The door to the center range—a row of cells accessible by a steel door—was partially open. (*See id.* ("The door to the center range was almost completely shut."); Doc. 31 at 28–37 (describing door to the center range)). As he approached the center range, Defendant Nicholas engaged in a verbal dispute with several inmates. (*See* Doc. 60 at 14 ("Several inmates were yelling at me while we walked by and the door opened."); Doc. 31 at 27–29 (describing argument with Defendant Nicholas over recreation activities and access to recreation)). According to Plaintiff, he then attempted to open the door all the way, at which point Defendant Nicholas cursed at him and kicked the door shut. (Doc. 31 at 28). As a result of Defendant Nicholas' actions, Plaintiff testified, the door "smashed" his fingers and hand. (*Id.* at 31–32).

On these facts, a jury could reasonably conclude that Defendant Nicholas used excessive

force against Plaintiff. First, a jury could reasonably conclude that "the relationship between the need for the use of force and the amount of force used," *Kingsley*, 125 S. Ct. at 2473, was not proportional. Defendants have not presented evidence that the partially opened door posed a security threat to Defendant Nicholas or correctional staff, or that Defendant needed to use physical force to resolve a verbal dispute. To the contrary, Plaintiff testified that jail staff sometimes left the door open for circulation, the door was already partially open, and that he attempted to open the door from inside his cell. (Doc. 31 at 31–32).

Second, a jury could reasonably conclude that "the extent of [Plaintiff's] injury," *Kingsley*, 125 S. Ct. at 2473, weighs in favor of a finding of excessive force. Plaintiff testified that he suffered nerve damage in his hand and that he still experiences pain from the incident. (Doc. 31 at 49). Further, he testified that he wears a hand brace to alleviate the pain. (*Id.* at 50).

Third, a jury could reasonably conclude that Defendant Nicholas' lack of effort "to temper or to limit the amount of force," *Kingsley*, 125 S. Ct. at 2473, weighs in favor of a finding of excessive force. Defendants have not presented any evidence of attempting to temper or limit the amount of force allegedly used on Plaintiff. But Plaintiff has testified that Defendant Nicholas slammed a steel door on his hand immediately after a short verbal altercation. (Doc. 31 at 27–29).

Finally, a jury could reasonably conclude that the remaining *Kingsley* factors weigh in favor of a finding of excessive force. As previously noted, Defendants have not presented any evidence that Defendant Nicholas confronted a "security problem," *Kingsley*, 125 S. Ct. at 2473, when he found the center range door partially open and engaged in a verbal dispute with several inmates. Nor have Defendants presented evidence that Defendant Nicholas "reasonably perceived" Plaintiff as a threat or that Plaintiff "was actively resisting." *id.*

Based on these facts, a jury could find that Defendant Nicholas used excessive force

8

against Plaintiff. *See Nelson v. Sharp*, 182 F.3d 918, 1999 WL 520751, at *2 (6th Cir. 1999) (*per curiam*) (concluding that "slamming the food slot door on" an inmate's hand could rise to the level of excessive force under the Eighth Amendment); *Scott v. Lindamood*, No. 1:17-CV-00007, 2017 WL 1282045, at *3–4 (M.D. Tenn. Apr. 6, 2017) (concluding that slamming a flap in a cell door on a prisoner's hand and wrist stated a claim for excessive force in violation of the Eighth Amendment).

Defendants' sole argument in support of summary judgment on this claim rests on their contention that Defendant Nicholas did not see Plaintiff at the time of the incident and that "Defendant Nicholas did not know Plaintiff's hand was in the crease of the door at the time." (Doc. 34 at 5). According to them, "[w]ithout any knowledge that Plaintiff's hand was in the crease of the door, Defendant Nicholas could not have been deliberately indifferent to Plaintiff's federally protected rights." (*Id.*).

While Defendants' argument misstates the relevant legal standard, it is true that, in order to establish an excessive force claim under *Kinglsey*, a plaintiff must demonstrate that an officer "purposely or knowingly" used force against him. *Kingsley*, 135 S. Ct. at 2473. Defendants' argument appears to be that there is no evidence Defendant Nicholas "purposely or knowingly" used force against Plaintiff. Defendants rely exclusively on Plaintiff's deposition testimony and his alleged admission that Defendant Nicholas was unaware of Plaintiff's presence at the time he forcibly closed the door.

This argument mischaracterizes the record. As discussed above, *see* Section I.A., at his deposition, Plaintiff equivocated about whether Defendant Nicholas knew that he was by the door at the time of the incident. When Plaintiff was asked whether Defendant Nicholas could see him, he stated "*probably* not." (Doc. 31 at 39 (emphasis added)). But he quickly clarified his

9

testimony, stating, "[w]ell, he knew I was there yelling. I mean, he knows who I am. He knows my voice. You know what I'm saying?" (*Id*.). Plaintiff also explained that he and Defendant Nicholas had exchanged words just prior to the injury. More specifically, Plaintiff testified that he pushed the door open with his fist while asking Defendant Nicholas if they "could … get some mother f*cking rec?," and Defendant Nicholas responded by telling him to "[s]hut the f*ck up" and "kicked the door shut." (*Id*. at 28).

This testimony creates a genuine issue of material fact that a jury, and not the Court, must resolve. On the one hand, Plaintiff appeared to indicate that Defendant Nicholas probably did not see him with his hand near the door. (Doc. 31 at 39). On the other hand, Plaintiff appeared to testify that Defendant Nicholas recognized Plaintiff's voice and knew Plaintiff was behind the door immediately prior to the incident. (*Id.*).

Plaintiff's affidavit submitted with his Response in Opposition only further demonstrates that a genuine issue of material fact exists on this point. (*See* Doc. 60 at 13). In it, he states that, at the time of the incident, he "could not know whether Ofc. Nicholas could see me or my hand in the door. I was able to see Ofc. Nicholas, as such, I would assume that he was physically able to see me, and stated this at deposition." (*Id.*). While Defendants argue that the Court should disregard Plaintiff's affidavit as an attempt to create a sham issue of fact, (Doc. 61 at 1–2), the Court disagrees. Instead, the Court reads the affidavit as an attempt by a confused prisoner to clarify his earlier equivocal deposition testimony. (*See id.* ("I would like to clarify for the record certain contents of the deposition . . . During the deposition, I was unable to comprehend what was happening.")). Because the affidavit does not directly contradict Plaintiff's deposition testimony, the Court considers it accordingly and finds that it further demonstrates a genuine issue of material fact on this point. *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006)

("[A] district court deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony. A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction. If, on the other hand, there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit constitutes an attempt to create a sham fact issue." (internal citations and quotation marks omitted)).

What is most striking at this stage of the proceedings is the lack of evidence before the Court. Defendants have not provided an affidavit or other testimony from Defendant Nicholas regarding his actions related to the incident in question. Because the evidence before the Court is mixed regarding whether Defendant Nicholas was aware that Plaintiff was near the door at the time of the incident, a genuine issue of material fact precludes summary judgment on this claim.

**B. Other Claims**

    <u>1. Denial of Medical Treatment</u>

For an inmate to establish a constitutional claim for the denial of medical treatment, the inmate must demonstrate the medical provider acted with "deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference includes "unnecessary and wanton infliction of pain" by "prison doctors in their response to the prisoners needs[,]" or "by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once proscribed." *Id.* at 104–05. While a pro se litigant's complaint should be construed liberally, it still must satisfy basic requirements for a deliberate indifference claim. *See id.* at 103–04.

Alleging deliberate indifference requires proving, by a preponderance of the evidence,

objective and subjective components: "a sufficiently grave deprivation, such as serious medical needs, and a sufficiently culpable state of mind." *Brooks v. Celeste*, 39 F.3d 125, 127–28 (6th Cir. 1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted)). Deprivation is examined by looking at the effects of a denial or delay in treatment. *See Loggins v. Franklin Cty.*, 218 F. App'x 466, 472 (6th Cir. 2007) (citation omitted). Sufficient state of mind is evidenced by a prison official's perception of "facts from which to infer substantial risk to the prisoner," their actual drawing of that inference, and subsequent disregard of the risk. *Perez v. Oakland Cty.*, 466 F.3d 416, 424 (6th Cir. 2006). Plaintiff cannot demonstrate either prong, and thus summary judgment is appropriate here.

Plaintiff, by his own testimony, defeats his claim alleging negligent medical treatment by county jail officials. Plaintiff testified that he requested medical treatment. (Doc. 31, at 41–42:18-1). He received the medical treatment he requested, performed by an outside specialist who arrived within "25, 30 minutes" after the request. (Doc. 31, at 45:7-18). The specialist performed an x-ray of Plaintiff's hand and determined there were no fractured or broken bones. (Doc. 31, at 46; *see also* Doc. 31, Ex. 3). The examination, x-ray, and report were all completed the same day as the incident. (Doc. 31, at 48:8-10). While Plaintiff may have experienced pain, there is nothing in the complaint or in the record demonstrating prison officials deprived Plaintiff of medical treatment and did so with the required scienter. Therefore, summary judgment for Defendants on this issue is appropriate.

2. Unauthorized Photograph(s)

Inmates necessarily lose certain rights when they are jailed. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of

penal institutions."). However, they are not subject to being "filmed and photographed at will by the public." *Houchins v. KQED, Inc.*, 438 U.S. 1, n.2 (1978). County sheriffs have wide authority to set the rules for prisoners and visitors. A county sheriff is charged to run the county jail in accordance with the minimum standards set by the Ohio Department of Rehabilitation and Correction ("DRC"). *See* Ohio Rev. Code § 341.01. The DRC has instituted rules applicable to prisoners and visitors alike, including a catch-all provision for violations of "any published institutional rules, regulations or procedures." O.A.C. § 5120-9-06(C)(61). The DRC has policies banning a visitor use of a cell phone. *See* Ohio Dept. Rehab. and Corr. Form No. 76-VIS-01, *Inmate Visitation*, Attachment 1 (Effective Jan. 8, 2018). The DRC also has rules regarding inmate mail.

These rules encompass materials mailed into, and out of, the jail. Officials must exercise reasonable discretion in setting and enforcing these rules. *See Thornburgh v. Abbott*, 490 U.S. 401, 409, 415–16 (1989) (quoting Turner v. Safley, 482 U.S. 78, 89 (1982)) ("The relevant inquiry is whether the actions of prison officials were 'reasonably related to legitimate penological interests.'"). The government's authority to promulgate these types of rules "is beyond question[,]" so long as they do not violate the First Amendment. *Id.* at 415. Mail to prisoners must comply with DRC policies, including those regarding photos. *See* Ohio Dept. Rehab. and Corr. Form No. 75-MAL-01, *Inmate Mail*, (Effective Oct. 23, 3017). Defendants' rules and actions were reasonable and necessary here.

Plaintiff claims "picture(s)" of him were taken "unbeknown to [him]" and subsequently distributed via social media. (Doc. 1, at 10). This claim suffers from multiple faults. Visitors are prohibited from carrying cell phones inside Muskingum County Jail; the person who took Plaintiff's photo did so in violation of the institution's rules. (Doc. 32 at ¶ 2). Neither Suciu nor

13

the Sheriff's Office exercised control over the visitor who photographed Plaintiff. (*See id.* at ¶ 3). Plaintiff's photo was not captured "unbeknown to [him]"; the record indicates Plaintiff was "posing for the camera in an effort to photobomb . . . the photograph." (*Id.* at ¶ 4). The photographer has since been banned from the facility. (*Id.* at ¶ 5). Similarly, Plaintiff accuses David Suciu of attempting "to cover-up" the photography issue by taking the copy sent to Plaintiff via the prison mail system. However, prison officials are well within their providence to regulate and confiscate mail which does not conform to the rules of the correctional institution. For these reasons, Plaintiff's claims fail and summary judgment for the Defendants is appropriate.

### 3. Muskingum County Sheriff

A sheriff's office is not capable of being sued under 42 U.S.C. § 1983. *Petty v. Cty. of Franklin, Ohio*, 478 F.3d 341, 347 (6th Cir. 2006) (holding, under Ohio law, a sheriff's office is not a legal entity capable of being sued for purposes of § 1983); *Barrett v. Wallace*, 107 F. Supp. 2d 949, 954–55 (S.D. Ohio 2000); *Hendricks v. Office of the Clermont Cty. Sheriff*, No. 06-4431, 326 F. App'x. 347, 349 (6th Cir. April 7, 2009) (same, in dicta). Summary judgment for Defendant "Muskingum County Sheriff's Department" is appropriate, as it would be had Plaintiff named the proper statutory authority, the Muskingum County Sheriff. *See* O.R.C. § 311.04(B)(1); (Doc. 1, at 3). Summary judgment should be granted for Defendant "Muskingum County Sheriff's Department."

### 4. Punishment Without Trial & Unwarranted Restraints

Plaintiff alleges the Defendants violated his constitutional rights by using unreasonable force, refusing his right to trial by jury, and subjecting him to unreasonable restraint without due process. (Doc. 1 at 7). However, the complaint contains no facts to support this claim. Even construing them liberally in favor of the *pro se* Plaintiff, summary judgment for the Defendants is

14

appropriate on this claim.

## IV. CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 34) be **GRANTED in part** and **DENIED in part**.

### **Procedure on Objections to Report and Recommendation**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: January 16, 2019 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE